**LEITNER et al. v. UNITED STATES.**

No. 12494.

United States Court of Appeals
Ninth Circuit.

Sept. 18, 1950.

John F. O'Sullivan, San Francisco, Cal., for appellant.

Ed Dupree, Gen. Counsel, Office of Housing Expediter, Leon J. Libeu, Assistant General Counsel, Louise F. McCarthy, and Francis X. Riley, Sp. Lit. Attorneys, all of Washington, D. C., for appellee.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

The United States brought this action to enjoin alleged violations of § 206(a) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1896(a), and to recover, on behalf of all persons entitled, restitution of overcharges collected by the defendants. Defendants appeal from a summary judgment granting the relief prayed. 86 F.Supp. 628.

From the pleadings and the answer to appellee's request for admissions and interrogatories, it appears that appellants were at all pertinent times the owners of a certain apartment, which was occupied from March 1942, through July 12, 1947, by one Leres, "a servant, caretaker and manager" of the building in which the apartment is located; that said Leres was given the occupancy as full compensation for his services, without payment of money on either side; and that said apartment was subsequently occupied by one of the appellants from about July 13, 1947, until December 26, 1947. It further appears that from January 1, 1948, through April 1, 1949, the apartment was occupied by one Hawkins, at a rental of $65 per month, or $40 per month in excess of the maximum rental prescribed by the Rent Director for this fifteen-month period.

Appellants filed numerous interrogatories and a request for admissions. A motion to strike made by appellee was granted and summary judgment in the sum of $600, representing a $40 overcharge for each of fifteen months, was granted.

Appellants make three assignments of error. They argue but one: viz., that the facts alleged show that the apartment had been decontrolled. The remaining two are deemed abandoned. Cf. Western Nat. Ins. Co. v. LeClare, 9 Cir., 1947, 163 F.2d 337, 340.

The contention that the premises in question were decontrolled is predicated upon the 1948 amendments to § 202(c) (3) (B) of the Housing and Rent Act of 1947, 62 Stat. 94, which provided that the term "controlled housing accommodations" does not include accommodations "which for any successive twenty-four month period during the period February 1, 1945, to the date of enactment of the Housing and Rent Act of 1948, both dates inclusive, were not rented (other than to members of the immediate family of the landlord) as housing accommodations". It is said that premises made available to a servant in compensation for his services are not "rented" within the meaning of this section. We do not agree. Unquestionably, if the occupancy is given in return for the services, by the same token the services are given in return for the occupancy. *Rent* is defined in § 202(e) as "the consideration, including any bonus, benefit, or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations, or the transfer of a lease of housing accommodations." The general terms used should not be restricted to cases where money is actually paid. The situation is the same as though Leres had received a check for his services and endorsed it over to his landlords. See O.P.A. Interpretation 4-V-4 issued December 2, 1942; revised, July 1, 1945—Rent Regulation for Housing, p. 29, issued July 1, 1945; Woods v. Lansdowne, D.C.S.D.Cal. 1949, 86 F.Supp. 811.

Appellants rely on subsection b(1) (ii) of § 825.1 of the Housing Regulations, which reads: "(b) *Decontrolled and exempted housing to which §§ 825.1 to 825.12, inclusive, do not apply—(1) Exempted housing.* Sections 825.1 to 825.12, inclusive, do not apply to the following: * * * (ii) *Service employees.* Dwelling space occupied by domestic servants, caretakers, managers, or other employees to whom the space is provided as part or all of their compensation and who are employed for the purpose of rendering services in con-

nection with the premises of which the dwelling space is a part. * * *" Subparagraph (1) of subsection (b) deals only with exempted housing, while subparagraph (2) deals with decontrolled housing. 13 Fed.Reg. 5706, 5707, Oct. 2, 1948; 24 C.F.R. 276, 277-78 (1949). Hence, appellants' apartment was not decontrolled but merely exempt and ceased to be exempt when it was rented to Hawkins. This conclusion is supported by the interpretations published by the office of the Housing Expediter.[1]

Judgment affirmed.

1. 14 F.R. 5706, 5787, Oct. 2, 1948; 24 C. F.R. 276, 446 (1949).

"9. **Housing accommodations which were exempt from rent control during two-year period.** Where during the two-year period housing accommodations were rented under circumstances which caused the renting to be exempt from the rent regulations, the mere fact that such an exemption existed does not result in decontrol. For example, where housing accommodations were occupied during the two-year period by a janitor as part of the compensation he received for his services as janitor, the housing accommodations, so long as this situation existed, were exempt from the rent regulations. If, however, after expiration of the two-year period, the housing accommodations are no longer occupied by a janitor under such an arrangement, but are rented to a tenant under an ordinary rental agreement, the exemption ceases to apply, and the question arises whether they are decontrolled on the basis that they had not been "rented" during the two-year period. Such housing accommodations are not decontrolled on that basis because, even though they were exempt during the two-year period, they were rented during that period to a person who was not a member of the landlord's immediate family.

"Another example of the same principle is the following: A college dormitory was occupied by students during the two-year period under circumstances which made rooms exempt from rent control. After the two-year period, the college proposes to rent the rooms in the structure to professors or other persons on an ordinary landlord-tenant basis. Such a renting would be subject to rent control because, although the rooms in the dormitory were exempt during the two-year period, they were in fact rented to persons other than members of the landlord's immediate family."